UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DAVE WAYNE MONTGOMERY,          )
                                )   No. CV-07-090-CI
            Plaintiff,          )
                                )   ORDER GRANTING PLAINTIFF'S
v.                              )   MOTION FOR SUMMARY JUDGMENT AND
                                )   REMANDING FOR ADDITIONAL
MICHAEL J. ASTRUE,              )   PROCEEDINGS
Commissioner of Social          )
Security,                       )
                                )
            Defendant.          )
_____)

    BEFORE THE COURT are cross-Motions for Summary Judgment (Ct.
Rec. 14, 17.)  Attorney Maureen Rosette represents Plaintiff;
Special Assistant United States Attorney Daphne Banay represents
Defendant.   The parties have consented to proceed before a
magistrate judge. (Ct. Rec. 8.) After reviewing the administrative
record and briefs filed by the parties, the court **GRANTS** Plaintiff's
Motion for Summary Judgment, and remands to the Commissioner for
additional proceedings.

                          **JURISDICTION**

    On May 11, 2007, Dave Wayne Montgomery (Plaintiff) protectively
filed applications for disability insurance benefits and Social
Security Income benefits. (Tr. 387.)  Plaintiff alleged disability

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR ADDITIONAL PROCEEDINGS - 1

due to depression, stress and mood swings, with an onset date of February 28, 2004. (Tr. 80, 104.) Benefits were denied initially and on reconsideration. (Tr. 40.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Richard Say on June 14, 2006. (Tr. 42, 403-26.) Plaintiff, who was present and represented by counsel, and vocational expert Daniel McKinney testified. The ALJ denied benefits and the Appeals Council denied review. (Tr. 6-8.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

### STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. At the time of the hearing, Plaintiff was 48 years old and had a high-school education. He had been divorced twice and had four children. (Tr. 264.) He testified he lived alone in a mobile home. (Tr. 407.) He was able to cook simple meals, clean, do laundry, drive a car, and do his own shopping. He stated he shopped at night to avoid people and spent the day watching television or listening to music. (Tr. 411-13.) He had past relevant work as a painter, maintenance mechanic, parts sales clerk, sales clerk and customer service clerk. (Tr. 420-21.) He testified he could not work because he could not stand people and became very angry with the politics of the workplace and his co-workers. (Tr. 410.)

### ADMINISTRATIVE DECISION

At step one, ALJ Say found Plaintiff had not engaged in substantial gainful activity since February 28, 2004, the alleged onset date. (Tr. 20.) At step two, he found Plaintiff had severe

impairments of major depressive disorder and anxiety disorder, not otherwise specified (NOS), but determined at step three that these impairments did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings). (Tr. 20, 23.)   The ALJ found Plaintiff's allegations regarding his limitations were not totally credible.  (Tr. 25.)   At step four, he determined Plaintiff had a residual functional capacity (RFC) of no exertional limitations, but had mental impairments that resulted in the following RFC:

> [H]e has the ability to understand, remember and carry out complex and simple instructions.  He has occasional to frequent difficulty interacting with others but he is capable of working around, but not in cooperation with others.  He is capable of superficial public and coworker contact for work purposes and he would react slowly to change.

(Tr. 24.)   Referencing testimony from vocational expert Daniel McKinney, the ALJ concluded Plaintiff could perform his past relevant work as a painter or maintenance mechanic.  (Tr. 27.)   The ALJ determined Plaintiff was not disabled at any time through the date of his decision.  (Id.)

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more

1    than one rational interpretation, the court may not
     substitute its judgment for that of the Commissioner.
2    *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of
     Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
3

4         The ALJ is responsible for determining credibility,
     resolving conflicts in medical testimony, and resolving
     ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
5    Cir. 1995). The ALJ's determinations of law are reviewed
     *de novo*, although deference is owed to a reasonable
6    construction of the applicable statutes. *McNatt v. Apfel*,
     201 F.3d 1084, 1087 (9th Cir. 2000).
7

8                        **SEQUENTIAL PROCESS**

9         Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the

10   requirements necessary to establish disability:

11        Under the Social Security Act, individuals who are
     "under a disability" are eligible to receive benefits. 42
12   U.S.C. § 423(a)(1)(D). A "disability" is defined as "any
     medically determinable physical or mental impairment"
13   which prevents one from engaging "in any substantial
     gainful activity" and is expected to result in death or
14   last "for a continuous period of not less than 12 months."
     42 U.S.C. § 423(d)(1)(A). Such an impairment must result
15   from "anatomical, physiological, or psychological
     abnormalities which are demonstrable by medically
16   acceptable clinical and laboratory diagnostic techniques."
     42 U.S.C. § 423(d)(3). The Act also provides that a
17   claimant will be eligible for benefits only if his
     impairments "are of such severity that he is not only
18   unable to do his previous work but cannot, considering his
     age, education and work experience, engage in any other
19   kind of substantial gainful work which exists in the
     national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus,
20   the definition of disability consists of both medical and
     vocational components.
21

22        In evaluating whether a claimant suffers from a
     disability, an ALJ must apply a five-step sequential
23   inquiry addressing both components of the definition,
     until a question is answered affirmatively or negatively
24   in such a way that an ultimate determination can be made.
     20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The
25   claimant bears the burden of proving that [s]he is
     disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.
26   1999). This requires the presentation of "complete and
     detailed objective medical reports of h[is] condition from
27   licensed medical professionals." *Id.* (citing 20 C.F.R. §§
     404.1512(a)-(b), 404.1513(d)).

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR ADDITIONAL PROCEEDINGS - 4

1    It is the role of the trier of fact, not this court, to resolve
2   conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence
3   supports more than one rational interpretation, the court may not
4   substitute its judgment for that of the Commissioner.  *Tackett*, 180
5   F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).
6   Nevertheless, a decision supported by substantial evidence will
7   still be set aside if the proper legal standards were not applied in
8   weighing the evidence and making the decision.  *Brawner v. Secretary*
9   *of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If
10  there is substantial evidence to support the administrative
11  findings, or if there is conflicting evidence that will support a
12  finding of either disability or non-disability, the finding of the
13  Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-
14  1230 (9th Cir. 1987).

15                              **ISSUES**

16   The question is whether the ALJ's decision is supported by
17  substantial evidence and free of legal error.  Plaintiff argues the
18  ALJ erred in finding Plaintiff's mental impairments were not
19  disabling.  (Ct. Rec. 15 at 11.)  Specifically, Plaintiff asserts
20  the ALJ erred when he (1) created the implication of conflict of
21  interest by relying on opinions of a non-examining agency
22  psychologist who later performed a consultative examination; (2)
23  improperly rejected the March 2005, opinions of his examining
24  psychologist, James Bailey, Ph.D.; and (3) failed to explain the
25  weight given opinions from Nurse Practitioner, Barbara Scott.  (Id.
26  at 13-14.)

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR ADDITIONAL PROCEEDINGS - 5

**DISCUSSION**

**A.    Conflict of Interest**

Although Plaintiff relies on Dr. Bailey's 2005 evaluation form to support his claim of disability, he argues that the ALJ's consideration of that examining medical source report for the Washington Department of Social and Health Services (DSHS) and Dr. Bailey's 2004 non-examining medical source report as a State agency physician creates an implication of conflict of interest under 20 C.F.R. § 404.1519q.  (Ct. Rec. 15 at 13.)  Defendant disagrees, stating that the conflict of interest provision does not apply because Dr. Bailey's 2005 evaluation was prepared for State benefits eligibility, not as a consultative examining medical source working for the Social Security Administration.  (Ct. Rec. 18 at 12.)

The Regulation at issue provides as follows:

> All implications of possible conflict of interest between medical or psychological consultants and their medical or psychological practices will be avoided.  Such consultants are not only those physicians and psychologists who work for us directly but are also those who do review and adjudication work in the State agencies.  Physicians and psychologists who work for us directly as employees or under contract will not work concurrently for a State agency.  Physicians and psychologists who do review work for us will not perform consultative examinations for us without our prior approval.  In such situations, the physician or psychologist will disassociate himself or herself from further involvement in the case and will not participate in the evaluation, decision or appeal actions. . . .  Sometimes physicians and psychologists who do review work for us will have prior knowledge of a case; for example when the claimant was a patient.  Where this is so, the physician or psychologist will not participate in the review or determination of the case.  This does not preclude the physician or psychologist from submitting medical evidence based on treatment or examination of the claimant.

20 C.F.R. § 404.1519q.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 6

In September 2004, Dr. Bailey reviewed Plaintiff's case and completed a Psychiatric Review Technique form as a non-examining consultant.[1]    (Tr. 203-215.)   He determined a RFC assessment was necessary, based on evidence of an affective disorder, "major depressive disorder, in partial remission," which he assessed as causing a "mild" limitation in activities of daily living and ability to maintain of concentration, persistence or pace, and "moderate" limitation in his ability to maintain social functioning. He found no evidence of decompensation. (Tr. 203, 206, 213, 216.) His findings were based on the record at that time, including a psychological evaluation form completed by Barbara Scott, ARNP, dated March 4, 2004 (Tr. 162-67.); a psychiatric evaluation by Paul Michels, M.D., dated July 24, 2004,[2] (Tr. 185-89); and a work

---

[1] Dr. Bailey's 2004 evaluation is identified as being completed by a "DDS physician," *i.e.*, a physician for the State disability determination services.   (Tr. 3.)   Under the Social Security Regulations (Regulations), State agencies can carry out the initial disability or blindness determination function consistent with standards and administrative requirements and procedures of the Regulations. 20 C.F.R. §§ 404.1502, .1503, .1601. On review, the ALJ is responsible for assessing the claimant's RFC after considering the State agency psychologist's and other acceptable medical source's assessment. *Social Security Ruling (SSR)* 96-6p.

[2] Dr. Michels conducted a client interview and mental status exam.   It does not appear he administered objective testing.   He diagnosed "major depressive disorder, recurrent, in partial remission," and assessed mildly impaired concentration, pace and

questionnaire from a former employer, dated July 8, 2004, (Tr. 116-17).   In the accompanying Mental RFC form, Dr. Bailey concluded Plaintiff had "mild" to "moderate" functional limitations; was able to do multi-step tasks; could work around others, but not in close cooperation with them; have superficial public and co-worker contact; and would react slowly to change.  (Tr. 217-19.)

In December 2004, non-examining DDS psychologist Dr. Mary Gentile completed a review, finding no adaptive limitations.  (Tr. 242-57.)   Noting that Plaintiff was not formally assessed, she concluded he would do best away from the public but could work around others, but not in close cooperation.  "Supervision should be clear and directive to avoid power struggles."  (Tr. 244.)

Plaintiff also submitted the March 2005, Psychological Evaluation form and narrative report that Dr. Bailey prepared for DSHS.  (Tr. 263-67.)   At that exam, Dr. Bailey administered the Wescshler Adult Intelligence scale (WAIS-III) and a mental status exam.   In his narrative report, Dr. Bailey diagnosed anxiety disorder, not otherwise specified (NOS), and personality disorder, NOS. (Tr. 266.)  He concluded Plaintiff exhibited frequent conflict in social interaction with co-workers and supervisors and was very limited in verbal ability.  However, Plaintiff's activities of daily

persistence; however, he found Plaintiff exhibited an ability to understand, remember and follow both complex and simple instructions.   Most notable was Plaintiff's irritability which "would likely cause occasional to frequent difficulties interacting appropriately with others.   Stress would likely cause transient worsening in his symptoms."  (Tr. 189.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR ADDITIONAL PROCEEDINGS - 8

living were mostly independent, and he was able to do multi-step, primarily non-verbal tasks. Dr. Bailey noted specifically that Plaintiff had no work or work-like behavior in the past 12 months on which to evaluate decompensation episodes. (Tr. 267.)

In contrast, Dr. Bailey's accompanying check list form indicates "marked" expressions of anxiety and anger and "marked" functional limitations in Plaintiff's ability to perform routine tasks and relate appropriately with co-workers, supervisors and the public. (Tr. 260-61.)

Under the facts of record in this case, the court cannot say that the "implication" of conflict of interest is absent. *See, e.g., Bergstad v. Commissioner of the Social Security Admin.*, 967 F.Supp. 1195 (D. Or. 1997). Less than six months after he made DDS findings of non-disability, Dr. Bailey essentially reversed his findings after limited objective testing and examination of Plaintiff. Although his 2005 evaluation is not specifically a review or determination of the Social Security Administration case, Dr. Bailey had prior knowledge of the case, including Dr. Michel's evaluation, at the time he conducted the DSHS evaluation of a case based on the same operative facts. To avoid any implication of possible conflict of interest, as well as resolve the attendant ambiguity of Dr. Bailey's findings, the record must be developed further with a new consultative examination by a psychologist who has not participated in this case. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir 2001) (ALJ's duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.

2001). Further, the consultative examination should include objective psychological testing to formally assess Plaintiff's mental disorders and their severity. If the results of the new psychological examination conflict with other evidence of record (excluding Dr. Bailey's 2005 report), medical expert testimony should be obtained regarding the severity of mental impairments, based on the entire record.

**B.   Step Four Findings**

At step four, the Commissioner makes RFC findings, and determines if a claimant can perform past relevant work. Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. *SSR* 82-62. This is done by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920 (a)(4)(iv). Past relevant work is work performed in the last 15 years, lasted long enough to learn it and was substantial gainful employment. *SSR* 82-61. In finding that an individual has the capacity to perform a past relevant job, the decision must contain among the findings the following specific findings of fact:

1.   A finding of fact as to the individual's residual functional capacity;

2.   A finding of fact as to the physical and mental demands of the past job/occupation; and

3.   A finding of fact that the individual's residual functional capacity would permit a return to his or her past job or

occupation.  *SSR* 82-62.

These findings must be based on the evidence in the record and must be developed and fully explained in the disability decision. Evidence of the physical and mental requirements of a particular job may be found in the Dictionary of Occupational Titles (*DICOT*), other administratively recognized publications, or vocational expert testimony.  *SSR* 82-61.  Vocational experts are used most often at an ALJ hearing.  *SSR* 00-4p.   Step four requires specific findings on all three points sufficient "to insure that the claimant really can perform his past relevant work."  *Pinto v. Massanari,* 249 F.3d 840, 845 (9th Cir. 2001); *see also SSR* 00-40.

On remand, considering the new consultative psychological examination, additional evidence submitted by Plaintiff, if any, and additional vocational expert testimony, if the ALJ determines Plaintiff can perform past relevant work, he will make specific step four findings consistent with the Commissioner's rulings, as discussed above.  *See SSR* 82-62.   Accordingly,

**IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment **(Ct. Rec. 14 )** is **GRANTED**, and the case is remanded to the Commissioner for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.  Defendant's Motion for Summary Judgment **(Ct. Rec. 17)** is **DENIED;**

3.   An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment

shall be entered for Plaintiff, and the file shall be **CLOSED**.

DATED October 23, 2007.


_____S/ CYNTHIA IMBROGNO_____
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR ADDITIONAL PROCEEDINGS - 12